EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
GOLDEN LAW
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.V.G., | ) Case No. |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** ) **DEMAND** |
| vs. | ) |
| UNITED STATES OF AMERICA; JESSE VALERO, in his individual capacity; [FIRST NAME UNKNOWN] KNITTLE, in his individual capacity, | ) ) ) ) |
| Defendants. | ) ) |

## INTRODUCTION

1.      Plaintiff F.V.G. served a sentence in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," beginning in April 2022 until the facility closed.

2.      While housed at FCI Dublin, Plaintiff F.V.G. faced constant sexual harassment, culminating in sexual abuse and prolonged time in segregated housing.

*F.V.G. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 1

3. Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

4. As a result, Plaintiff F.V.G. suffers from long-lasting trauma.

**JURISDICTION AND VENUE**

5. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

6. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff F.V.G. will list this case on the bi-monthly list that will be submitted to the Court to relate this case to those other cases.

**PARTIES**

9. Plaintiff F.V.G. was at all times relevant here incarcerated in FCI Dublin.

10. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institution Dublin ("FCI Dublin"). FCI Dublin was a federal female low-security correctional institution.

11. Defendant Jesse Valero was, at all times relevant hereto, a Captain at FCI Dublin. He is sued in his individual capacity.

12. Defendant [First Name Unknown] Knittle was, at all times relevant hereto, a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

//

//

13.     While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff F.V.G. Plaintiff F.V.G. was dependent upon Defendant United States for her personal security and necessities.

14.     In performing the acts and/or omissions contained herein, Defendants Valero and Knittle acted under color of federal law, and Plaintiff F.V.G. is informed and believes each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff F.V.G. Defendant United States knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff F.V.G. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendant United States failed to take steps to protect Plaintiff F.V.G. and to ensure her rights to safety from sexual abuse.

## FACTS

15.     From April 29, 2022, through April 2024, Plaintiff F.V.G. was incarcerated at FCI Dublin.

16.     During that time, Plaintiff F.V.G. became intimately familiar with why it was known as "the Rape Club".

17.     She experienced sexual harassment and abuse from guards regularly and saw such abuse happening to other women at Dublin.

18.     Plaintiff F.V.G. regularly saw how other prisoners would face retaliation for reporting sexual abuse or harassment, including loss of privileges, prolonged confinement in the SHU, or loss of good-time credit resulting in a longer BOP sentence.

19.     Beginning in November 2022, Defendant Valero began showing an interest in Plaintiff F.V.G. when she started working as a cleaner in the officers' offices.

20.     Defendant Valero, who was a Captain at the time, made her work in the Lieutenant's office, because that was where his office was, as well.

21.     When Plaintiff F.V.G. was working in the back officers' patio, Defendant Valero would come and talk with her.

22. Defendant Valero would ask her personal questions about her family and would later reference this information indicating that he committed it to memory.

23. Defendant Valero spoke Spanish, and at the time Plaintiff F.V.G. did not speak much English.

24. As a result, she isolated herself from other prisoners, because she learned that if she asked them to translate things for her, they would talk about the information to other people.

25. Besides putting himself out as a confidante, Defendant Valero would regularly bring Plaintiff F.V.G. outside food and lipstick.

26. This went on for about one or two months.

27. During this time, Plaintiff F.V.G. began noticing that Defendant Valero would openly ask her personal questions in ear shot of other staff.

28. Because of how obvious Defendant Valero was being and the lack of reaction from other staff, Plaintiff F.V.G. believed that staff would support Defendant Valero and that she could not refuse his advances.

29. One day, after one or two months of working for Defendant Valero, he had her take the trash out from underneath his desk, and when Plaintiff F.V.G. put a hand on the desk to pick herself up, he grabbed her hand and put it between his legs, on top of his clothed penis.

30. This was the first time he had her touch him inappropriately.

31. However, the abuse did not stop there.

32. Every time that Plaintiff F.V.G. was cleaning his office, he would have her clean the back patio area and would touch her and have her touch him.

33. He forced Plaintiff F.V.G. to touch his erect penis numerous times.

34. On more than 10 occasions, Defendant Valero groped Plaintiff F.V.G.'s breasts under her shirt, groped her buttocks, and digitally penetrated her vagina.

35. His abuse continued through the end of May 2023.

36. Defendant Valero would force Plaintiff F.V.G. to clean impossible-to-remove stains in front of him so that she would be bent over in his presence for long periods of time.

37. Defendant Valero also told Plaintiff F.V.G. that he wanted her to perform oral sex on him and that he wanted to have sex with her, but Plaintiff F.V.G. was able to evade his advances.

38. She was terrified, however, that she would be unable to continue evading them, and was constantly on guard.

39. On or about October 1, 2023, Plaintiff F.V.G. was in her cell getting dressed and was naked. Defendant Knittle opened her cell door, entered the room while she was naked, and proceeded to stare at her.

40. Plaintiff F.V.G. was terrified about what could happen, given her prior experience of sexual abuse, and felt violated by Defendant Knittle's leering at her.

41. After Defendant Knittle left her cell, Plaintiff F.V.G. made a Prison Rape Elimination Act ("PREA") report.

42. Officers Hardy and Peponis took note of her complaint.

43. In October of 2023, after Plaintiff F.V.G. filed the PREA report on Defendant Knittle, he entered Plaintiff F.V.G.'s room, threw all of her personal items around and made a mess of her cell, and alleged that she was altering her clothing and trying to seduce officers.

44. In another instance, even though Plaintiff F.V.G. was dressed in BOP clothing, similar to how other prisoners were dressed, Defendant Knittle sent her back to her cell from the dining hall, saying she was inappropriately dressed.

45. When she saw the lieutenant, however, he told her that she was appropriately dressed and could return to the dining hall.

46. In November 2023, Captain Erika Quezada called Plaintiff F.V.G. to the Lieutenant's office to discuss Defendant Knittle's abuse.

47. Officer Quezada falsely told Plaintiff F.V.G. that there was nothing she could report under the prison's PREA policy because she did not report any unlawful touching.

48. Unlawful touching is not required to make a PREA complaint under BOP policy.

49. Plaintiff F.V.G. then reported Defendant Valero's abuse.

50. Captain Quezada responded that Defendant Valero no longer worked there and that, therefore, they could not do anything about it.

51. This was the first time that Plaintiff F.V.G. realized that Defendant Valero no longer worked at FCI Dublin.

52. Following her report of abuse to Defendant Quezada, and in response to the multiple instances of sexual abuse and sexual assault, on or about November 10, 2023, Plaintiff F.V.G. began to have a mental breakdown and was placed on suicide watch for two to three days.

53. She was then accused of consuming K-2, even though she had not, and was moved to the Special Housing Unit ("SHU") for one month.

54. She ultimately wound up serving two separate one-month terms in the SHU, causing Plaintiff F.V.G. significant mental anguish.

55. Plaintiff F.V.G. lived in fear of officers at Dublin and experienced great anxiety, fear, shame, and embarrassment over what they did to her.

56. She never felt safe at FCI Dublin.

57. Plaintiff F.V.G. is a survivor of childhood sexual abuse, so the sexual abuse she experienced at FCI Dublin further compounded her trauma.

58. Plaintiff F.V.G. continues to suffer from severe anxiety and depression and believes she will again be sexually abused by other officers.

59. Plaintiff F.V.G. remains in BOP custody and continues to fear officers and staff at each facility she has been in.

### EXHAUSTION

60. On May 20, 2025, Plaintiff F.V.G., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

61. The BOP acknowledged receipt on May 22, 2025.

62. The BOP has not substantively responded to her claim.

//

//

//

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.4)

63.     Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

64.     Plaintiff F.V.G. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees, Defendant Valero and Defendant Knittle.

65.     The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

66.     These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as a federal employee.

67.     Their position as correctional officers was essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

68.     Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

69.     Defendant Valero discriminated against Plaintiff F.V.G. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts.

70.     By these acts, Defendant Valero caused Plaintiff F.V.G. physical, mental, and emotional injuries as well as injury to her personal dignity.

71.     Defendant Knittle discriminated against Plaintiff F.V.G. based on her gender when he attempted to sexually abuse her.

72.     By these attempts, Defendant Knittle caused Plaintiff F.V.G. mental and emotional injuries as well as injury to her personal dignity.

//

//

## SECOND CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendants Valero and Knittle)
### (Cal. Civ. Code § 52.4)

73.     Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

74.     Plaintiff F.V.G. brings this claim for gender violence under California Civil Code § 52.4 against Defendants Valero and Knittle.

75.     These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

76.     Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

77.     Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

78.     Plaintiff has a nonfrivolous argument that Defendants Valero and Knittle bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

79.     Defendant Valero discriminated against Plaintiff F.V.G. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts.

80.     By these acts, Defendant Valero caused Plaintiff F.V.G. physical, mental, and emotional injuries as well as injury to her personal dignity.

81.     Defendant Knittle discriminated against Plaintiff F.V.G. based on her gender when he attempted to sexually abuse her.

82.     By these attempts, Defendant Knittle caused Plaintiff F.V.G. mental and emotional injuries as well as injury to her personal dignity.

//
//
//

**THIRD CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant United States)**
**(FTCA; California Common Law)**

83.    Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

84.    Plaintiff F.V.G. brings this claim for sexual assault under the Federal Tort Claims Act for violation of California common law against the United States based on the conduct of its employees, Defendants Valero and Knittle.

85.    These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

86.    Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

87.    Defendant Valero violated Plaintiff F.V.G.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

88.    Defendant Valero's sexual abuse of Plaintiff F.V.G. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

89.    Defendant Valero subjected Plaintiff F.V.G. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff F.V.G.'s person.

90.    By intentionally subjecting Plaintiff F.V.G. to sexual acts, Defendant Valero acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

91.    By repeatedly subjecting Plaintiff F.V.G. to sexual acts, Defendant Valero caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

92.    Defendant Knittle violated Plaintiff F.V.G.'s right to be free from sexual assault by attempting to sexually abuse her while she was incarcerated.

93.    Defendant Knittle's attempts to sexually abuse Plaintiff F.V.G. were deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

94.    Defendant Knittle subjected Plaintiff F.V.G. to these attempts with the intent to cause a harmful or offensive contact with Plaintiff F.V.G.'s person.

95. By intentionally subjecting Plaintiff F.V.G. to attempts to sexually abuse her, Defendant Knittle acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

96. By repeatedly subjecting Plaintiff F.V.G. to attempts to sexually abuse her, Defendant Knittle caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FOURTH CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendants Valero and Knittle)**
**(California Common Law)**

97. Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

98. Plaintiff F.V.G. brings this claim for sexual assault for violation of her rights under California common law against Defendants Valero and Knittle.

99. Defendant Valero violated Plaintiff F.V.G.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

100. Defendant Valero's sexual abuse of Plaintiff F.V.G. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

101. Defendant Valero subjected Plaintiff F.V.G. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff F.V.G.'s person.

102. By intentionally subjecting Plaintiff F.V.G. to sexual acts, Defendant Valero acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

103. By repeatedly subjecting Plaintiff F.V.G. to sexual acts, Defendant Valero caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

104. Defendant Knittle violated Plaintiff F.V.G.'s right to be free from sexual assault by attempting to sexually abuse her while she was incarcerated.

105. Defendant Knittle's attempts to sexually abuse Plaintiff F.V.G. were deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

106. Defendant Knittle subjected Plaintiff F.V.G. to these attempts with the intent to cause a harmful or offensive contact with Plaintiff F.V.G.'s person.

107. By intentionally subjecting Plaintiff F.V.G. to attempts to sexually abuse her, Defendant Knittle acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

108. By repeatedly subjecting Plaintiff F.V.G. to attempts to sexually abuse her, Defendant Knittle caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

109. Plaintiff has a nonfrivolous argument that Defendants Valero and Knittle bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

**FIFTH CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 1708.5)**

110. Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

111. Plaintiff F.V.G. brings this claim for sexual battery under the Federal Tort Claims Act based on California Civil Code § 1708.5 against the United States for the conduct of its employee, Defendant Valero.

112. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

113. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

114. Defendant Valero committed sexual battery against Plaintiff F.V.G. by repeatedly sexually abusing her while she was incarcerated as a minimum-security prisoner at FCI Dublin.

115. The sexual abuse of Plaintiff F.V.G., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

116. Defendant Valero subjected Plaintiff F.V.G. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff F.V.G.'s person.

**SIXTH CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant Valero)**
**(Cal. Civ. Code § 1708.5)**

117. Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

118. Plaintiff F.V.G. brings this claim for sexual battery under California Civil Code § 1708.5 against Defendant Valero.

119. Defendant Valero committed battery against Plaintiff F.V.G. by repeatedly sexually abusing her while she was incarcerated as a minimum-security prisoner at FCI Dublin.

120. The sexual abuse of Plaintiff F.V.G., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

121. Plaintiff has a nonfrivolous argument that Defendant Valero bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

122. Defendant Valero subjected Plaintiff F.V.G. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff F.V.G.'s person.

**SEVENTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant United States)**
**(FTCA; California Common Law)**

123. Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

124. Plaintiff F.V.G. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of Defendants Valero and Knittle.

125. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

126.    Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

127.    Defendants Valero and Knittle engaged in outrageous conduct by repeatedly subjecting Plaintiff F.V.G. to sexual acts and threats of sexual acts while she was incarcerated as a prisoner in their employer's custody. They abused their authority over Plaintiff F.V.G. and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

128.    Defendants Valero's and Knittle's sexual abuse and sexual assault caused Plaintiff F.V.G. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

129.    Defendants Valero and Knittle intended to cause Plaintiff F.V.G. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse and sexual assault of a prisoner.

### EIGHTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendants Valero and Knittle)
### (California Common Law)

130.    Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

131.    Plaintiff F.V.G. brings this claim for the intentional infliction of emotional distress against Defendants Valero and Knittle.

132.    Defendant Valero engaged in outrageous conduct by repeatedly subjecting Plaintiff F.V.G. to sexual acts while she was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff F.V.G. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

133.    Defendant Valero's sexual abuse caused Plaintiff F.V.G. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so

substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

134.    Defendant Valero intended to cause Plaintiff F.V.G. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

135.    Defendant Knittle engaged in outrageous conduct by subjecting Plaintiff F.V.G. to sexual assault while she was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff F.V.G. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

136.    Defendant Knittle's sexual assault caused Plaintiff F.V.G. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

137.    Defendant Knittle intended to cause Plaintiff F.V.G. this emotional distress because he knew that emotional distress was likely to result from his sexual assault of a prisoner.

138.    Plaintiff has a nonfrivolous argument that Defendants Valero and Knittle bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

**NINTH CLAIM FOR RELIEF**
**BANE ACT**
**(against all Defendants)**
**(FTCA; Cal. Civ. Code § 52.1)**

139.    Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

140.    Plaintiff F.V.G. was in the custody and control of the United States during all relevant times.

141.    Defendants Valero and Knittle violated Plaintiff F.V.G.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; her right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual

abuse; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

142. Plaintiff has a nonfrivolous argument that Defendants Valero and Knittle bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

143. Defendant United States, by the actions of its employees Defendants Valero and Knittle, interfered with Plaintiff F.V.G.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; her right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual abuse; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

144. As a proximate result of these acts, Plaintiff F.V.G. sustained damage and injury.

**TENTH CLAIM FOR RELIEF**
**TRAFFICKING VICTIMS PROTECTION ACT**
**(against all Defendants)**
**(18 U.S.C. § 1581, *et seq.*)**

145. Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

146. Defendants Valero and Knittle knowingly recruited, enticed, and solicited Plaintiff F.V.G. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

147. Defendants Valero and Knittle made Plaintiff F.V.G. engage in sex acts through force and coercion.

148. Plaintiff has a nonfrivolous argument that Defendants Valero and Knittle bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

149.    This conduct has caused Plaintiff F.V.G. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

**ELEVENTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

150.    Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

151.    Defendants Valero and Knittle knowingly recruited, enticed, and solicited Plaintiff F.V.G. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

152.    Defendants Valero and Knittle made Plaintiff F.V.G. engage in sex acts through force and coercion.

153.    Defendant United States employed Defendants Valero and Knittle, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

154.    This conduct has caused Plaintiff F.V.G. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**TWELFTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendants Valero and Knittle)**
**(Cal. Civ. Code § 52.5)**

155.    Plaintiff F.V.G. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

156.    Defendants Valero and Knittle knowingly recruited, enticed, and solicited Plaintiff F.V.G. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

157.    Defendants Valero and Knittle made Plaintiff F.V.G. engage in sex acts through force and coercion.

158.   Plaintiff has a nonfrivolous argument that Defendants Valero and Knittle bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

159.   This conduct has caused Plaintiff F.V.G. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**PRAYER FOR RELIEF**

160.   Plaintiff F.V.G. prays for judgment against Defendant, and each of them, as follows:

(a)   An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff F.V.G. in an amount to be determined at trial;

(b)   An award to Plaintiff F.V.G. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c)   For such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff F.V.G. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: March 12, 2026

SIEGEL, YEE, BRUNNER & MEHTA

By:_____
EmilyRose Johns

GOLDEN LAW

By: /s/ Deborah M. Golden
Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming

*Attorneys for Plaintiff*